Serrallés et al., Demandantes y Apelantes, *v.* "Sucesión de Juan Serrallés," Demandada y Apelada.

Apelación procedente de la Corte de Distrito de Ponce en pleito sobre reivindicación de una finca, etc.

No. 2850.—Resuelto en julio 18, 1923.

Reivindicación—Evidencia Acumulativa—Error no Perjudicial.—La no admisión de cierta evidencia documental acumulativa, tendente a acreditar el pago de contribuciones, de ser error, no fué perjudicial en este caso.

Id.—Evidencia—Presunciones—Autenticación de Firma.—No constituye error el negarse a admitir en evidencia una carta sin fecha cuya firma no se autenticó y cuya antigüedad no quedó acreditada.

Id.—Prueba Contradictoria—Apreciación de Prueba Contradictoria.—Analizada la prueba que sirvió de base a la sentencia, *se resolvió:* que los autos no demuestran que al apreciarla en favor de la demandada, la corte inferior cometiera error fundamental alguno.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. R. Martínez Nadal.*

Abogado de la apelada: *Sr. F. Parra Capó.*

El Juez Presidente Sr. del Toro, emitió la opinión del tribunal.

Está envuelta en este pleito la cuestión de propiedad de cierta finca rústica denominada "Las Hoyas," situada en el término municipal de Santa Isabel.

Se alega en la demanda que la finca de que se trata fué comprada por don Juan Serrallés en 1877 para darla como la dió a su hermano don Marcial, causante de los demandantes, "en recompensa de trabajos que el mismo le había hecho." Que la escritura primeramente se redactó a nom-

bre de don Marcial dándose a la finca el nombre de ''Regalo,'' pero luego se otorgó a nombre de don Juan para que éste que estaba en mejores condiciones para ello, estableciera cierta reclamación con respecto a la cabida de la finca. Se alega además en la demanda que don Marcial poseyó quieta y pacíficamente la finca, en concepto de dueño, hasta su muerte ocurrida en 1906, entrando entonces en posesión sus herederos los demandantes y estándolo hasta 1908 en que tuvieron que abandonarla a virtud de sentencia de desahucio.

Contestó la sociedad demandada alegando que la finca en cuestión fué comprada en efecto por don Juan Serrallés de su dueño don José Cerdá pero no en 1877, sino en 1881. Negó que la adquisición se hiciera primeramente a nombre de don Marcial, ni definitivamente a nombre de don Juan para don Marcial. Expuso que don Juan a los efectos de evitar disgustos entre los mayordomos y su hermano don Marcial en relación con el cuido del ganado, adquirió ''Las Hoyas'' y la entregó a su hermano para que cuidara en ella el ganado que tenía, con la sola obligación de encargarse del pago de las contribuciones de la finca. La propiedad permaneció siempre en don Juan. Al morir éste, fué adjudicada la finca a sus herederos y luego los herederos la aportaron a la sociedad demandada.

Se celebró el juicio practicándose una larga prueba testifical y documental, y la corte, ''como resultado de toda la evidencia en conjunto,'' opinó que la ley y los hechos estaban a favor de la parte demandada y dictó sentencia declarando sin lugar la demanda, con las costas a los demandantes.

No conformes los demandantes establecieron el presente recurso de apelación señalando los siguientes errores cometidos a su juicio por la corte, 1, al dejar de emitir la relación del caso y opinión que ordena la ley; 2, al negarse a admitir como prueba dos comunicaciones de apremio de la

Alcaldía de Santa Isabel fechadas en 1899; 3, al admitir como prueba el testamento de don Juan Serrallés; 4, al admitir como prueba la partición de bienes llevada a efecto con motivo de dicho testamento; 5, al no admitir como prueba cierta carta de José Santiago; 6, al admitir como prueba ciertos recibos de contribución; 7, al apreciar en general la prueba en favor de la demandada, y 8, al reconocer un valor probatorio que no tiene a la intervención de don Marcial Serrallés en las operaciones particionales del caudal hereditario de su hermano don Juan.

Examinemos el primer error. Además de la sentencia existe una llamada relación del caso y opinión. Dicho documento sólo contiene una conclusión general. No fué esa la intención de la legislatura. De acuerdo con el artículo 227 del Código de Enjuiciamiento Civil, tal como quedó enmendado en 1911, el juez "hará y archivará una relación breve del caso *exponiendo los hechos según éstos resulten ante él y dando las razones en que funde su decisión*. Las itálicas son nuestras. Esta corte ha insistido en que los jueces deben cumplir con el deber que la ley les impone, pero también ha resuelto, entre otros en el caso de *Quiñones v. Vivoni,* 20 D. P. R. 490, 494, que la falta de cumplimiento de tal deber no lleva consigo la revocación de la sentencia.

Veamos el segundo error. Los demandantes introdujeron como prueba dos cartas firmadas por Francisco Segarra que comienzan así: "Alcaldía Municipal de Santa Isabel." Una está fechada el 15 de abril de 1889, otra el 16 de agosto de 1889. Ambas están dirigidas a don Marcial Serrallés y en ellas se le requiere para que pague sus contribuciones al Tesoro.

Para evitar una larga discusión técnica, puede aceptarse que el error fué cometido. Esa aceptación no tiene importancia alguna para la decisión del recurso. El error no fué perjudicial. Con mejor prueba documental,—certificación del Secretario del Ayuntamiento de Santa Isabel,—

acreditó la parte demandante que su causante desde 1880 hasta la implantación del "Bill Hollander" pagó a título de dueño las contribuciones que se imponían a la finca "Las Hoyas." La misma parte demandada admitió que la finca fué entregada a don Marcial con la única obligación de que pagara las contribuciones. Las cartas de que se trata constituían prueba simplemente acumulativa.

A nuestro juicio no existen los errores señalados con los números tres y cuatro. Tanto el testamento como las operaciones particionales fueron propia y debidamente admitidos. Esta conclusión quedará explicada cuando examinemos conjuntamente los errores siete y ocho.

La corte no erró al negarse a admitir una carta sin fecha firmada por "José Santiago" no obstante la declaración de la testigo Mercedes Serrallés que dijo que la había encontrado entre los papeles de su padre. Su padre murió en 1906 y no consta con certeza cuándo la recibió. La antigüedad del documento no quedó acreditada y siendo ello así debió autenticarse la firma.

Tampoco erró la corte al admitir ciertos recibos del pago por la parte demandada de la contribución impuesta a la finca después del desahucio. En realidad de verdad dicha prueba carece de importancia.

En la discusión de los errores séptimo y octavo, especialmente en la del primero, pues el octavo está comprendido en el séptimo, es que descansa la decisión de este interesante litigio.

Extensa y hábilmente analiza la prueba la parte apelante en su alegato. Menos extensa pero no menos hábilmente la analiza también la parte demandada en el suyo. Sostiene la parte apelante que alegó y probó que la finca en cuestión le pertenece a título de compra que para él hizo el causante de la demandada y si así no se estimare, a virtud de prescripción. Existe una incongruencia entre lo alegado y lo que intentó probar con sus testigos en el juicio la

parte demandante. En la demanda se alega una donación remunerativa, los testigos hablan de una compra hecha con dinero de don Marcial quedando el título a favor de don Juan para ser traspasado en el momento oportuno. En la partición de los bienes que dejó a su fallecimiento don Marcial se hizo figurar la finca de que se trata como adquirida por don Marcial y su esposa en 1883 a título de herencia de su menor hija Juana que a su vez la había adquirido por donación graciosa que le hiciera su tío y padrino don Juan Serrallés.

Hechas estas observaciones preliminares a las cuales llama la atención la parte demandada en su alegato, veamos a grandes rasgos cuál fué el resultado de la prueba.

No hay cuestión alguna con respecto a la identidad de la finca. La reclamada por los demandantes está poseída por la demandada.

Se admite por la parte demandada que el causante de los demandantes y luego éstos estuvieron en posesión de la finca desde 1881 hasta 1908 en que los demandantes fueron desahuciados. Y aquí surge el conflicto en dos extremos esencialísimos: punto de partida de la posesión; concepto de la misma.

La prueba escrita más antigua que aquí existe es la escritura pública de 22 de agosto de 1881 por virtud de la cual don Juan Serrallés compró a su dueño don José Cerdá la finca de que se trata. En dicha escritura no se hace referencia directa ni indirecta a don Marcial Serrallés. Pasaron los años. Murió don Juan y entre sus bienes se inventarió la finca y se adjudicó a sus herederos. Los herederos luego la aportaron a la sociedad demandada. A virtud de esa cadena de títulos probados por documentos públicos, es que la demandada posee en la actualidad la finca que reclaman como suya los demandantes.

¿Qué prueba aportan para ello? Los mismos demandan-

tes la clasifican así: testifical, documental, admisiones. Examinemos la testifical.

El testigo Juan Príncipe declaró substancialmente, que la finca objeto de este pleito fué comprada en el año 1877, a principios de año para don Sebastián Marcial Serrallés quien entró inmediatamente en posesión de la misma en lo que se le transmitía la escritura, y se arreglaban ciertos inconvenientes; que la venta en realidad la hizo don José Quesada pero que antes de otorgarse la escritura, aunque ya en posesión don Marcial Serrallés de la finca, éste encontró que le faltaban unas 40 cuerdas y como era un hombre alcohólico y de genio un poco agresivo y de poca capacidad mental, el señor Quesada no pudo entenderse con él y entonces le pasó la escritura a don José Cerdá, pero éste tropezó con los mismos inconvenientes del carácter y la intransigencia de don Marcial y tampoco le pudo pasar la escritura por lo que entonces tuvo que intervenir don Juan Príncipe, el testigo, que es el que había hecho de corredor en la venta y se dirigió a don Juan Serrallés y al contarle a éste los entorpecimientos que tenían con don Marcial para el otorgamiento de la escritura, don Juan Serrallés le dijo "tú sabes como es Marcial, no le hagan caso, pásame la escritura a mí y yo pago los dos mil pesos; porque yo tengo dinero de Marcial;" que entonces así se hizo y don José Cerdá pasó la escritura a nombre de don Juan; que desde el año 1877 hasta que se pasó la escritura y quedó legalizado el negocio transcurrieron por lo menos de 3 a 4 años; que don Marcial se hizo cargo de la finca y entró a a poseerla como dueño en el 1877 y que él lo vió haciendo actos de dueño sin ser interrumpido por nadie ni sin intervención de don Juan Serrallés desde esa fecha.

Juan Bota depuso: que en el año 1877 vino de España y se colocó de segundo mayordomo con don Juan Serrallés en la hacienda "Mercedita," la "Fe," "Laurel" y otras de dicho señor; que luego ascendió a primer mayordomo

y más tarde, al embarcarse el administrador don Pedro Salas, don Juan Serrallés lo ascendió a administrador general y que fué su empleado durante diez y seis años; que desde el año 1877 siempre le oyó decir en conversaciones a don Juan Serrallés que la estancia situada en "Las Hoyas," barrio del "Descalabrado," Santa Isabel, era de su hermano don Sebastián Marcial Serrallés; que esto lo decía don Juan Serrallés con frecuencia en conversaciones que tenía con sus mayordomos durante las comidas que hacían juntos; que recuerda que una vez le dijo delante de don Eduardo Wellemkamp, su apoderado general, don Pedro Salas su administrador de campo y don Perico Fournier su tenedor de libros; que durante los diez y seis años que permaneció colocado con don Juan Serrallés nunca como mayordomo ni después como administrador general intervino ni recibió de don Juan órdenes de intervenir en la estancia de "Las Hoyas," de su hermano don Marcial; que como administrador general estuvo encargado durante varios años de la dirección del cultivo y administración de todas las fincas de don Juan Serrallés y que nunca intervino en la estancia de don Marcial; que en cambio administraba y dirigía una estancia de "Río Cañas" pegada al "Río Descalabrado" de Santa Isabel y que está separada de la de don Marcial por el río y que recuerda perfectamente que volteando a caballo una vez esta estancia de "Río Cañas" en unión de don Juan, éste le dijo "mira ésa es la finca de mi hermano Marcial" y que entonces pasaron el río y la vieron y que recuerda que colindaba con un tal Salich, y con don Pedro María Descartes; que le consta que don Marcial Serrallés era el único que hacía actos de dueño en esa finca sin oposición de nadie y que no sabe si esa finca fué comprada por don Marcial o se la regaló don Juan Serrallés pero lo que sí sabe es que éste decía que era de su hermano don Marcial.

El testigo Alers declaró, que estuvo más de veinte años

empleado con don Marcial Serrallés y que éste era el único que se tenía por dueño, administraba, vendía frutos, pagaba trabajos y ordenaba cultivos en la finca "Las Hoyas," sin rendirle cuentas a nadie y sin ser interrumpido por nadie en la posesión; que nunca vió a don Juan Serrallés ni a los mayordomos o empleados de éste voltear ni administrar ni ordenar nada en dicha finca y que esto fué así siempre durante la vida de don Marcial y durante los dos años después de su muerte, que la poseyeron como dueños, quieta, pública y pacíficamente sin interrupción de nadie sus hijos Marcialito, padre del menor demandante y la otra demandante su hija Mercedes, hasta el año 1908 en que por primera vez vió en el camino de esa finca a don Canuto del Valle, empleado de la Sucesión de don Juan Serrallés quien le anunció que en aquel momento lo iban a desahuciar de la finca, pues él era el que estaba encargado de administrarla entonces por orden de los hijos de don Marcial.

Y el testigo Salich depuso, que es de 74 años de edad; que siendo él un hombre como de 30 años había estado a hacer unos trabajos en una finca colindante de la que aquí se reclama y ya estaba en posesión de ella quieta y pacíficamente como dueño, don Marcial Serrallés.

Otros testigos declararon sobre los mismos extremos pero los anteriores son en verdad los testimonios más importantes y los expresamente invocados por los apelantes al discutir el séptimo error que estamos examinando.

Como admisiones se presentaron las de Juan Eugenio Serrallés y Eduardo Wellenkamp. El primero, miembro de la sociedad demandada, según declaró la demandante Mercedes Serrallés, cuya declaración está corroborada por la de su costurera Martina Ramírez, allá por el 1908 cuando se tramitaba el desahucio, visitó a Mercedes y como ésta se le quejara le dijo que le quitaban la finca porque sabían que ella iba a venderla y malbaratar el dinero, pero

que él sabía que era de ella.   Y el segundo, apoderado general de la Sucesión Serrallés, según el testigo Manuel Vidal Sánchez, cuando el testigo fué a hablarle del asunto por tratarse del arreglo de la testamentaría de la esposa de don Marcial, respondió: "dígale a Marcial que no se apure, que no tenga miedo, que en cuanto yo me levante le pasaré la escritura de 'Las Hoyas' porque la Sucesión de don Juan Serrallés sabe que esa finca no es de ella, que esa finca es de Marcial."

Con respecto al pago de contribuciones se presentó una certificación expedida en 1914 por el Secretario del Ayuntamiento de Santa Isabel, que, en lo pertinente, dice:

"Certifico:   Que don Marcial Serrallés y Colón, desde el año mil ochocientos ochenta, hasta la implantación del Bill Hollander, pagó a título de dueño, las contribuciones que se le imponían a una finca compuesta de doscientas cuarenta y una cuerdas radicada en este término municipal, barrio Descalabrado, sitio 'Las Hoyas' y nombrada Regalo."

Y otra autorizada por B. R. Dix, Tesorero interino, que expresa:

"Que según consta de los antecedentes que existen en este Departamento correspondientes a la valuación de la propiedad del año económico de 1901 a 1902 Marcial Serrallés ha declarado poseer en el barrio Descalabrado, del término municipal de Santa Isabel, las siguientes propiedades: 'Rústica ciento cincuenta y una cuerdas de terreno valoradas en $3,000, una casa en $200 y personal $1,152, total cuatro mil trescientos cincuenta y dos dollars. La planilla figura firmada—S. M. Serrallés—a las que se les asignó 43 dollars 52 cents., por toda contribución al año, la cual ha sido liquidada por recibo número 50 asst. del referido año económico de 1901 a 1902."

Y, por último, se introdujo una carta que copiada a la letra, dice:

"Sr. D. S. M. Serrallés:—Hda. Mercedita.—Marzo 17/889.—Estimado hermano: He amanecido hoy bien de mi garganta. Le

dije a don Eduardo como yo salgo para Santo Domingo que él te pase la escritura de las Hoyas a tu favor; él sabe que esa finca ha sido comprada para ti.   He recibido el maíz que has remitido.   Tu hermano, Juan.''

Si se da crédito a la prueba de los demandantes, sería necesario concluir que la finca en cuestión les pertenece.

¿Apreció la corte de distrito esa prueba apasionadamente?   ¿Cometió algún error manifiesto al resolver el conflicto existente entre esa prueba y los títulos aportados por la sociedad demandada, en favor de ésta?

Analizada en sí misma, deja la prueba de los demandantes cierta duda en el ánimo del juzgador.   Hay un hecho que no es posible destruir: la escritura de adquisición de la finca por don Juan Serrallés en 1881.   Como la posesión de los demandantes cesó en 1908, el 1881 no era lo suficientemente antiguo para abarcar el período de treinta años necesario para la prescripción extraordinaria.   Había que ir más lejos y Príncipe asegura que la finca fué comprada en 1877; Bota dice que vino de España en 1877, y desde el 1877 oyó decir en conversaciones a don Juan que la finca era de don Marcial, y Salich, que tiene setenta y cuatro años, asegura que siendo un hombre de treinta observó que don Marcial era poseedor como dueño de la finca.   La explicación que da Príncipe no es satisfactoria.   No se concibe cómo entró en posesión don Marcial en 1877 sin pagar nada y así permaneció hasta 1881, viéndose obligado el vendedor Quesada para obviar la dificultad de llegar a un acuerdo con don Marcial a pasar el título a Cerdá y no pudiendo Cerdá entenderse tampoco con don Marcial tuviera que recurrir a don Juan que pagó entonces, cuatro años más tarde, el precio de la finca.   No hemos podido encontrar en los autos ni un átomo de prueba con respecto a las gestiones que debía hacer don Juan en relación con la cabida de la finca, única circunstancia que motivó que el título figurara a su nombre.   La fecha de 1877 es, pues, sospechosa,

por lo menos incierta. La misma certificación del Secretario del Ayuntamiento de Santa Isabel relativa al pago de contribuciones, sólo alcanza al 1880. Comprendemos perfectamente que la corte desechara por completo la teoría de la prescripción extraordinaria.

Veamos la donación remunerativa o la adquisición en confianza por don Juan para don Marcial con dinero de éste.

Aunque hay prueba de la parte demandada que lo contradice, puede aceptarse que desde 1881 don Marcial entró en la posesión de la finca y pagó como dueño las contribuciones y ante el público aparecía como dueño. Esto, unido a las admisiones de Juan Eugenio Serrallés y Eduardo Wellenkamp y a la carta de don Juan Serrallés, ¿será suficiente para concluir que don Marcial no sólo aparecía sino que era en realidad de verdad el dueño de la finca?

Por sí sólo el hecho de pagar contribuciones como dueño no es suficiente para probar el dominio. Tampoco lo es la posesión como dueño, sin justo título, a menos que transcurran treinta años.

Veamos las admisiones. Es raro realmente que mientras se tramitaba el pleito de desahucio que supone una lucha de intereses entre familia generalmente enconada, fuera Juan Eugenio Serrallés a visitar a su prima tan a menudo como ella expresa en su declaración. Cuando el juicio se celebró, Juan Eugenio Serrallés vivía pero se encontraba fuera de Puerto Rico. En cuanto a la admisión de Wellenkamp, que había fallecido, nos parece conveniente transcribir la crítica que de ella hace en su alegato el abogado de la demandada. Es como sigue:

"Suponemos que la corte habrá comprendido por la declaración de Manuel Vidal, por la de Mercedes Serrallés, que la intervención de este testigo es algo más interesada que la de un mero testigo. Tiene su oficina de agente de negocios legales en el mismo local que el abogado del pleito, fué consejero de don Marcial, ha

tenido la prueba documental en sus manos, para que no se per-
diera, se ocupó de buscar y ordenar en el Archivo Notarial ciertos
documentos para el pleito, importantes, etc.; de modo que su de-
claración debe ser tomada con cautela, porque de hombres es el
errar, y muchas veces, de muy buena fe llegamos al error guiados
por la pasión que ponemos en el éxito de cierta empresa. Así re-
sultan cosas que no son. fáciles de comprender. Por ejemplo: se-
gún declara Vidal Sánchez (folio 64 y siguientes de la transcrip-
ción), al morir la esposa de don Marcial, éste quiere arreglar su
testamentaría para darle a sus hijos lo que les corresponde, y ha-
bla con Vidal Sánchez para que obtenga de Wellenkamp el título
de esa finca; Wellenkamp aplaza el asunto para cuando mejore de
salud, y mandándole a decir a don Marcial 'que no se apure, que la
sucesión sabe que esa finca era de él.' Pero es lo cierto que pasa
el tiempo, muere Wellenkamp, muere luego don Marcial y esa tes-
tamentaría que tanto interés tenía en hacer don Marcial nunca se
hizo. Certificación del Archivero General al folio 13 y siguientes
de la transcripción, en la que se ve que al hacer los herederos de
don Marcial su testamentaría dicen que esa finca la adquirieron
don Marcial y su esposa por herencia de una hija a quien se la
había regalado don Juan; y que por muerte de la esposa se la ad-
judicaron los herederos que eran dos menores, a don Marcial, para
el pago de deudas, sin que en ninguna de esas trasmisiones mediara
título escrito; lo que indica que no hubo testamentaría en la que
se hiciera esa adjudicación. Y este documento se hizo ante Ma-
tienzo en donde trabajaba Vidal Sánchez, que sin duda en su con-
versación con Wellenkamp y con don Marcial pudo obtener datos
sobre el verdadero origen de la finca, que ahora resulta es distinto
al que dice ese documento."

Es la carta de don Juan Serrallés la única prueba que
nos ha hecho vacilar en este pleito. Quizá el peso de ella
nos obligaría a desechar las dudas y sospechas surgidas a
virtud del examen en sí mismas de las declaraciones de los
testigos de la parte demandante, pero la voz de don Juan
no sólo se escucha en forma cierta a través de esa carta,
sino por medio de su testamento. No olvidó don Juan, rico,
a su hermano Marcial, de escasos bienes de fortuna. Lo
nombró en su testamento albacea y le legó: "todas las can-

tidades que le estuviere adeudando hasta el día de su falle-cimiento y además los terrenos de la estancia 'Paraíso,' si-tuados en el barrio del 'Real,' y separados de los demás terrenos de su propiedad con exclusión de las aguas conce-didas a dichos terrenos para riego, las cuales pertenecen hoy a las Haciendas 'Laurel,' 'Mercedita' y 'Fe,' y ordenó asimismo a sus albaceas y herederos que auxilien a su ci-tado hermano en todo lo que se pueda y el estado de su ca-pital lo permita." Y no es posible concebir que un hom-bre, como lo demuestra la prueba que era don Juan Serra-llés, que se acordó al ir a hacer un corto viaje a Santo Do-mingo en 1889 que tenía pendiente el traspaso de la escri-tura de "Las Hoyas," olvidara cumplir con ese deber para con su hermano en el momento solemne en que disponía de sus bienes para después de su muerte y cuando su atención estuvo fija en su dicho hermano y le legó las cantidades que le adeudaba y los terrenos de la estancia "Paraíso" y ordenó a sus herederos que continuaran auxiliándolo.

Quizá la intención de don Juan al comprar la finca "Las Hoyas" y entregarla a su hermano fué transmitirle tam-bién algún día el título de propiedad. Quizá reveló esa in-tención al escribir en 1889 la carta presentada como prueba. Pero es lo cierto que jamás llegó a traducir en un hecho de verdadero valor legal su intención y cuando llegó el momento de donar algunos bienes a su hermano escogió para ello la estancia "Paraíso."

Pero hay algo más en la prueba aportada por la parte demandada. No sólo fué nombrado don Marcial albacea sino que como tal albacea intervino en las operaciones tes-tamentarias de don Juan y en esas operaciones autorizadas con la firma de don Marcial entre las fincas inventariadas como pertenecientes a la herencia figura la estancia de "Las Hoyas."

Convenimos en que ello por sí solo no constituiría un impedimento absoluto para establecer esta reclamación,

pero esa circunstancia unida a las otras que se han analizado, nos lleva finalmente a decidir que la conclusión a que llegara la Corte de Distrito se basa, a nuestro juicio, en una apreciación inteligente y justa de las alegaciones y las pruebas.

Tampoco se han cometido los errores séptimo y octavo, y debe confirmarse, en todas sus partes, la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolf, Aldrey y Franco Soto.

El Juez Asociado Sr. Hutchison firmó "Conforme con la sentencia."